[File No. 7085]

GEORGE JESTER, Louie Hellens and Nancy Lawhorn, Appellants, v. HARVEY C. JESTER, Respondent.

(37 NW2d 879)

Opinion filed June 2, 1949

*Sinness & Duffy,* for appellants.
*J. J. Kehoe* and *C. E. Joseph,* for respondent.

POLLOCK, District J.   The plaintiffs in this action are two half-sisters and a half-brother of John C. Jester, deceased.   The defendant is a half-brother of said decedent, who, on November 8th, 1944, was appointed by the County Court of Towner County as Administrator of the Estate of John C. Jester, deceased.

The plaintiffs bring this action against the defendant as an individual and not in his capacity as Administrator of the Estate of John C. Jester, deceased.   The action is one to quiet title to three-fifths interest in fee in 240 acres of land in Towner County. The complaint is in the usual form in an action to determine adverse claims and alleges that the plaintiffs have an interest, to-wit: an undivided three-fifths title in fee, as heirs of John C. Jester, deceased, in the lands described in the complaint, and that the defendant claims certain estates or interests in such lands adverse to the plaintiffs.   The prayer for judgment is in the usual form in an action to determine adverse claims.   ND Rev Code 1943, § 32–1704.   The defendant in his answer admits that he claims certain estates or interests adverse to the plaintiffs.   The defendant also admits that John C. Jester, who died August 30th, 1944, was seized in fee of the premises in question; that plaintiffs and defendant together with others are heirs at law of said decedent and that said defendant, Harvey C. Jester, duly qualified as administrator of the estate of said decedent on the 8th day of November, 1944.   The defendant as an affirmative defense alleges a verbal agreement under the terms of which said defendant was to aid and assist John C. Jester in looking after said property and in caring for him during his lifetime, including his last illness and to defray the expense of such illness and funeral expenses and in consideration thereof the said defendant was to have all of the property of said John C. Jester as compensation for such services.   Defendant further alleges that he performed such services and that in consequence he is the

owner of the land described in the complaint and that the plaintiffs have no estate or interest in or lien or encumbrance upon the same. The case was tried to the court without a jury and the trial court made findings in favor of the defendant. The court found that the agreement set forth by the defendant had been made and that the defendant had fully complied with the same and it ordered that judgment be entered adjudging that the plaintiffs do not, nor do any of them, have any estate or interest in or lien or encumbrance upon the land described in the complaint and that the title to said lands be quieted in the defendant.

The plaintiffs have appealed from the judgment and demand a trial anew in this court. The answer of the defendant asserting title in himself and asking for affirmative judgment was a counterclaim. Power v. Bowdle, 3 ND 107, 54 NW 404, 21 LRA 328, 44 Am St Rep 511; Betts v. Signor, 7 ND 399, 75 NW 781; Goss v. Herman, 20 ND 295, 127 NW 78.

ND Rev Code 1943, § 32–1710 provides:

"A defendant interposing a counterclaim for purposes of trial shall be deemed plaintiff, and the plaintiff and codefendants against whom relief is sought shall be deemed defendants as to him."

Hence, when a defendant in an action to determine adverse claims interposes a counterclaim asserting title in himself and asking for affirmative judgment the court must determine and adjudicate the claims set forth in defendant's counterclaim even though plaintiffs' cause of action may fail. Reichelt v. Perry, 15 SD 601, 91 NW 459; Spencer v. Beiseker, 15 ND 140, 107 NW 189; Goss v. Herman (ND) supra.

The first question, therefore, that presents itself for determination on this appeal is whether the evidence establishes the existence of the contract under which the defendant claims that he is the owner of the lands involved in this action.

In his effort to establish said counterclaim defendant introduced a considerable portion of the testimony contained in the record in support of defendant's exhibit "1", which is one page of a small memorandum book in words and figures as follows:

"When i leave here Harve can have every thing i have when

my dets are paid written June 4 1839 by Roy hufford for John C. Jester"

It is conceded that such writing, other than the purported signature, "John C. Jester", is not that of the decedent. Defendant and other witnesses were unable to explain its origin or the identity of the person who wrote it. It cannot purport to be the last will of John C. Jester. Neither can it be construed to be a contract to make a will inasmuch as defendant did not know of its existence until some months subsequent to the death of his brother.

As proof of the performance on his part of the terms of the alleged verbal contract, defendant offered testimony of himself and three other witnesses. Mrs. Jesse Jester, a sister-in-law testified that defendant was looking after the property of John C. Jester while he was ill and he was at her home. That she knew that John C. Jester and defendant came up to North Dakota to look after the property. And again on direct examination by Mr. Joseph,

"Q. Mrs. Jester, tell what John C. Jester said about what he wanted to do with his estate at the time of his decease, using his language as near as you can remember?

A. Well, we talked about it several times and he would always say and he always said to me, 'I am going to stay here with you and when I am gone I intend for Harvey to have what I have left in pay for looking after my affairs and taking care of my debts when I leave here',—it might not be just exactly the words."

L. E. Calahan, banker at Munich, North Dakota, testified that in 1941 John C. Jester directed him to open a joint account in the bank in the names of J. C. and Harvey Jester. That all checks drawn upon said joint account were to be signed by defendant as follows: "J. C. and Harvey Jester". Mr. Calahan also testified that he had visited the farm subsequently and that both John C. Jester and defendant were there living together and that, in his opinion, Harvey Jester was looking after the land.

Jesse Jester, a brother of defendant, testified on direct examination by Mr. Kehoe:

"Q. Jesse, do you know who looked after and helped John C. Jester, the deceased, when he was living down at Arcadia, say

after 1914 and '15 up to the time he went to your home?

A. It must have been Harvey, there was nobody else.

Q. Do you know whether he did or not?

A. I rather think he did.

Q. Did you go to visit him?

A. Yes, I visited every month or so.

Q. And Harvey was looking after and caring for him?

A. Yes.

Cross examination by Mr. Duffy:

Q. Who was looking after Harvey?

A. John, I suppose."

In defendant's own testimony upon direct examination by Mr. Kehoe he was asked:

"Q. Who looked after the farming of the land since 1914?

A. I looked after the business end of it".

However, when he was being questioned by the trial judge about the purchase, in 1918, of an 80 acre tract of the land he testified as follows:

"Q. . . . why did you put it in your brother's name?

A. I was in the east that-a-way and I was not doing any business up here that-a-way and all the stuff was in my brother's name and father was living and I had to stay there while he lived."

The plaintiffs, in rebuttal, called as witnesses a father and son who had farmed the whole of the land from 1926 until the time of the death of John C. Jester. They both testified that they rented the land from John C. Jester and that all settlements were made with him. That during the last year or so before his death when John C. Jester was unable to come to North Dakota the checks were made payable to him, but were delivered to defendant. The son, Monte Knutson, on direct examination was asked:

"Q. During all of those years did you see any evidence of Harvey Jester financing Jack or financing the home or anything of that nature?

A. No, except they used to buy a few eggs of us and once in

awhile when Harve would come over he would pay for the eggs but most of the time it was Jack himself because Jack drove the car and lots of times Harve was not home when he was up here during the summer.

Q. In other words, Jack was here a lot of the time when Harve was not here?

A. Yes."

Cross examination by Mr. Joseph:

"Q. Was Harvey helping John about that business or any other business?

A. With me and my father I know Harvey never helped but the rest of his business I don't know anything about it."

The father, Theodore Knutson, on direct examination:

"Q. During all of these years that you were farming that land was it your understanding that you were doing business with J. C. Jester?

A. Yes, I always did.

Q. Did you at any time have any information or knowledge indicating that Harvey Jester had any interest in the land or was financing the home or anything?

A. No, sir.

. . . . . . . . . . . . . . . . . . . .

Q. Was he able to look after those matters himself?

A. Yes, he was."

Cross examination by Mr. Joseph:

"Q. You are positive that Harvey C. Jester was not present at any time during 1926 and 1927 to make settlements for his brother?

A. No, he was not.

Q. You are willing to testify that you always made settlements with John C. Jester?

A. Yes."

A second cousin of the parties, Mrs. Dolly Schwandt, testified upon direct examination:

"Q. I see, what would you say as to Jack Jester's physical and mental condition during the years that you have known him

up until the last couple of years before his death when he didn't return to his farm up here?

A. I always felt that Jack was able to take care of his business in all ways whatever and even after he was hurt and recovered he drove his car to California and back and he always drove his car on all trips to Indiana, and his mind was good.

Q. His condition was such that he was able to take care of himself?

A. Yes, he surely was.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

Q. Do you know anything about Harvey Jester being there at Jack's place as to what, if anything, he may have been doing for Jack in looking after him or his business?

A. So far as their business, that I don't know and at the times when he was up here Harve was usually away working and Jack was alone at home."

As proof of his allegation that in performance of said verbal contract on his part he paid expenses of last illness and funeral expenses, defendant, upon direct examination, testified as follows:

"Q. Do you know who, if anybody, paid his funeral expenses?
A. I did, I paid it myself.
Q. Out of your own funds?
A. Part of it and part of it I wrote checks for John.
Q. And who paid his hospital expenses?
A. I paid them from the check from here and we have the check.
Q. Did you pay all the debts he owed?
A. I haven't paid them all yet  .  .  .  ."

On cross examination by Mr. Duffy:

"Q. Mr. Jester, the hospital and funeral expenses that you said that you paid were paid by you out of the estate of John C. Jester were they not?
A. Except what I paid in money, I paid some in money that-a-way.
Q. And you filed a claim against the estate to reimburse you for the money that you paid out?

A. That is right."

Plaintiffs' exhibit "A" is a proof of claim filed by Jesse B. Jester for $1200.00 against the estate of John C. Jester, deceased, for care furnished to deceased from 1942 until shortly before his death. The claim was paid out of the assets of said estate.

A review of all the testimony and documentary evidence offered by defendant at the trial fails to spell out a contract between defendant and his deceased brother, John C. Jester. Defendant does not establish such verbal contract by a fair preponderance of the competent testimony offered in his behalf at the trial. It necessarily follows that such part of his counterclaim as is based upon such contract must be dismissed.

Defendant, as a part of his counterclaim, alleges in paragraph 8 of the answer:

"That after said verbal agreement the defendant and the said John C. Jester purchased the North half of the Northeast quarter (N½NE¼) of said Section 26, that the defendant furnished the funds therefor and that the title thereto was taken in the name of John C. Jester."

In support of such allegation defendant offered exhibit "7" being a letter, dated March 10th, 1916, from Clyde State Bank to defendant showing a renewal of a certain certificate of deposit issued by said bank to defendant, stating that twelve months interest in the sum of $46.07 earned on the preceding certificate of deposit had been added to the new certificate.

Defendant testified over objection by plaintiffs' counsel, "I sent the certificate up to my brother in care of Charlie Sillers at the Clyde bank and the two of them, or through Charlie Sillers they brought it down here to you when the settlement was made." In addition thereto defendant, over objection, also testified to sending money through said Clyde State Bank to his brother, John C. Jester, to make payment on the land and to finance an action to quiet title to said land. All of such testimony related to a transaction between defendant and his said brother, now deceased.

ND Rev Code 1943, Section 31-0103 provides:

"In any civil action . . . by or against . . . heirs at law . . . in which judgment may be rendered or ordered entered

for or against them, neither party, . . . shall be allowed to testify against the other as to any transaction whatever with or statement by the testator or intestate . . . ."

This court has repeatedly held that such testimony as that given by the defendant in the instant case is barred by such statute. Cardiff v. Marquis, 17 ND 110, 114 NW 1088; Regan v. Jones, 14 ND 591, 105 NW 613; Druey v. Baldwin, 41 ND 473, 172 NW 663, 182 NW 700; Schoenherr v. Henschel, 57 ND 146, 220 NW 837.

Plaintiffs by way of rebuttal introduced plaintiffs' exhibit "D," being a certified copy of a Lis Pendens, dated September 16th, 1918, filed for record in the office of the Register of Deeds of Towner County, North Dakota, at 8:30 o'clock A. M. on September 17th, 1918, and recorded in Book 8 of Miscellaneous Records at Page 286, in an action wherein John C. Jester was plaintiff and Prince Leonard was defendant, stating that said action was for the purpose of obtaining "a judgment, adjudging and decreeing that said plaintiff is the absolute owner in fee simple of an undivided half interest" in said 80 acre tract of land. In addition thereto there is also in the record a stipulation between the parties to the aforesaid action, dated September 19th, 1918, setting forth the terms of settlement between the parties and providing for the title to the whole of said 80 acre tract of land to be deeded to said John C. Jester.

It is the conclusion of this court that defendant has wholly failed to establish any right of ownership in said 80 acre tract of land, purchased in 1918 by said John C. Jester, now deceased. That the said John C. Jester was the owner in fee simple of said land at the date of his death.

Due to defendant's inability to substantiate his claim of ownership to any of the lands of his deceased brother it follows that his counterclaim as to the whole of said lands must be dismissed with prejudice on the merits. He may, however, assert his rights as an heir of John C. Jester, deceased. It is the holding of this court that the only interest of defendant in the property of said decedent is as an heir of the said John C. Jester, deceased.

At the commencement of the trial of this action in district court, it was stipulated that, upon the death of said John C.

Jester, he left him surviving as heirs at law, all of the parties plaintiff and defendant in this action, also another brother, Jesse Jester, and two nephews and two nieces, the sons and daughters of a deceased sister, Mary L. Killion, and three nieces, the daughters of another deceased sister, Effie Wadley. Such of the heirs not joined as parties to the instant action cannot have their rights in the lands affected thereby. It follows that such action is not conclusive as to the rights of said heirs in the lands which are the subject of said action. This being true no good purpose is served by further proceedings herein. Sexton v. Sutherland, 37 ND 500, 507, 164 NW 278. The County Court of Towner County is vested with jurisdiction to probate the estate of said decedent and to determine the several rights of said heirs at law.

The cause is remanded to the district court with direction that it vacate the judgment appealed from and render judgment the the defendant Harvey C. Jester has no right, title or interest in the real property described in the complaint except such as he has as an heir at law of the said John C. Jester, deceased; and that the action of the plaintiffs be dismissed without prejudice to the maintenance of further actions or proceedings to enforce such rights as they have or may claim as heirs of John C. Jester, deceased.

NUESSLE, Ch. J., and BURKE and CHRISTIANSON, JJ., and MILLER, District J., concur.

BURR and MORRIS, JJ., did not participate.